RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0331p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee*,

  *v.*

DYLAN MARSHALL,

  *Defendant-Appellant.*

No. 12-3805

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:11-cr-00557-1—Jack Zouhary, District Judge.

Argued: June 13, 2013

Decided and Filed:  November 21, 2013

Before:  McKEAGUE and DONALD, Circuit Judges; Lawson, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Charles L. Gerstein, UNIVERSITY OF MICHIGAN LAW SCHOOL FEDERAL APPELLATE LITIGATION CLINIC, Ann Arbor, Michigan, for Appellant. Alissa M. Sterling, UNITED STATES ATTORNEY'S OFFICE, Toledo, Ohio, for Appellee. **ON BRIEF:** Charles L. Gerstein, Rachel Rose Goldberg, UNIVERSITY OF MICHIGAN LAW SCHOOL FEDERAL APPELLATE LITIGATION CLINIC, Ann Arbor, Michigan, Melissa M. Salinas, Dennis G. Terez, OFFICE OF THE FEDERAL PUBLIC DEFENDER, for Appellant. Ava R. Dustin, UNITED STATES ATTORNEY'S OFFICE, Toledo, Ohio, for Appellee.

  McKEAGUE, J., delivered the opinion of the court in which DONALD, J., joined, and LAWSON, D. J., joined in the result.  LAWSON, D. J. (pp. 15–25), delivered a separate opinion concurring in the judgment.

_____

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

————————————

**OPINION**

————————————

McKEAGUE, Circuit Judge.   Dylan Marshall pled guilty to receiving child pornography over a period of 5 years, from the time he was 15 until he was 20.   The district court varied downward from the guideline range and sentenced him to 5 years in prison—the mandatory minimum sentence for the offense—expressing its concerns with the perceived harshness of that sentence as it did so.   Marshall has a rare physiological condition called Human Growth Hormone Deficiency, which he believes entitles him to the Eighth Amendment protections accorded to juveniles.   But despite his condition, Marshall was an adult at the time of the offense.   We therefore affirm his sentence.

## I.  BACKGROUND

**The Crime**

In the summer of 2010, an FBI agent discovered that an individual operating under the name "Gotanks721" was using a peer-to-peer file sharing program to share files containing child pornography.   The agent traced the IP address of the individual's computer to a residence in Wauseon, Ohio.

FBI agents obtained a warrant and searched the residence, seizing two computers and other miscellaneous electronic media.   They also interviewed Marshall, age 20 at the time, who lived in the house with his parents.   Marshall admitting to using a file sharing program to share and download child pornography.   He told the agents that he possessed pornographic images and videos of children ranging in age from four to twelve.

The FBI's analysis of Marshall's computer and other media revealed 261 images and 46 videos containing child pornography.   The date stamps on the files ranged from May 2005 to September 2010.   The analysis also revealed that beginning in 2009, Marshall had participated in online chat sessions discussing child pornography.

In December 2011, the government charged Marshall with one count of receiving child pornography in violation of 18 U.S.C. § 2252(a) and (b).  Marshall pled guilty.

**The Defendant**

Aside from his involvement with child pornography, it appears that Marshall was headed toward becoming a productive member of society.  He graduated from high school.  He lived with his parents.  He attended a community college part-time for four semesters, pursuing a career as a lab technician and paying his own tuition.  He worked as a machine operator for a commercial bakery.  He owned a car and had a credit card.

During an interview with his probation officer, Marshall said that he first started using file sharing programs to acquire music.  He soon discovered the availability of pornography and viewed it almost every day.  In his words, he used the file-sharing programs to look for "naked kids of my age."  PSR ¶ 29.  According to his probation officer, "[h]e said that he felt like he was viewing images of his peers.  He indicated he has often felt like a 15 or 16-year-old individual because of his small frame and stature."  PSR ¶ 30.

Indeed, Marshall's size and self-perceived age undergird most of the arguments he has raised on this appeal.  In 2005, when Marshall was 15, he was diagnosed with Human Growth Hormone Deficiency.  According to the Child Growth Foundation:

> Growth hormone deficiency or insufficiency occurs when the *pituitary gland*, a small pea sized gland at the base of the brain, fails to produce adequate levels of growth hormone.  Part of the brain called the *hypothalamus* controls the levels of hormones in the blood by triggering the pituitary gland into producing the required hormones.  This low level of growth hormone may be due to problems with the *hypothalamus* or with *the link between the hypothalamus and the pituitary gland* or with the *pituitary gland* itself . . . .  The level of growth hormone insufficiency may vary from mild to severe but as growth hormone is now available in large quantities, all children whose growth hormone levels are inadequate should be able to receive appropriate replacement treatment.
>
> Children with growth hormone deficiency are very short but with normal body proportions, facial appearance and intelligence.  Prior to treatment the child may also be "chubby" as growth hormone helps to

> control the fat under the skin. These children may look young for their
> age as physical development and bone age is delayed and consequently
> the skull will be immature producing the facial proportions of a younger
> child.

Child Growth Foundation, *Growth Hormone Deficiency*, Growth Hormone Deficiency: A Guide for Parents and Patients, 4 (Jan. 2003), *available at* http://www.childgrowthfoundation.org/CMS/FILES/02_Growth_Hormone_Deficiency.pdf. In addition to stunted growth, growth hormone deficiency can result in delayed pubertal development. Child Growth Foundation, *Puberty and the Growth Hormone Deficient Child*, Growth Hormone Deficiency: A Guide for Parents and Patients, 4 (June 2010), *available at* http://www.childgrowthfoundation.org/CMS/FILES/03_GrowthHormoneDeficiency.pdf.

When he was diagnosed at age 15, Marshall was extremely small for his age and had not yet entered puberty. He was treated with hormone injections for about five years. When his Presentence Investigation Report was prepared in 2012, he was 5' 5" and weighed 117 pounds.

Before his sentencing hearing, Marshall was evaluated on two separate occasions by a clinical psychologist named Gregory Forgac. Marshall told Dr. Forgac that he started viewing child pornography when he was 15. He said that he began by looking for people his own age. He did not know it was wrong until the FBI appeared at his parents' house.

Dr. Forgac noted that Marshall appeared younger than his chronological age. He administered a test called the Ammons Quick Test, which indicated that Marshall had an I.Q. of 87 and a mental age of 15 ½. Dr. Forgac found Marshall's diagnosis of Human Growth Hormone Deficiency to be noteworthy. He stated in his report that in addition to delayed physical growth, "[i]t is quite possible that self-perception and self-concept would also be significantly delayed." R. 12-1, Report, PageID # 44. He found that Marshall "appear[ed] to be quite immature for his chronological age due to his condition, . . . which inhibited his growth and maturation physically, emotionally and socially." *Id.* "It is quite likely that in all ways other than chronological age, this

individual was still a juvenile at the time of his arrest." *Id.* Dr. Forgac believed that "Marshall's behavior was a product of adolescent curiosity, moral immaturity and easy availability of pornography." *Id.* at PageID # 44-45. He recommended "education, monitoring and supervision and the opportunity to mature to age appropriate levels both physically and psychologically." *Id.* at PageID # 45.

**The Sentencing Hearing**

Marshall submitted Dr. Forgac's report to the district court along with his sentencing memorandum. His sentencing hearing was scheduled for June 4, 2012, but after reviewing the case and meeting with counsel, the district court postponed the hearing so that Dr. Forgac could appear and testify.

The hearing recommenced on June 25, 2012. Dr. Forgac appeared and testified. He explained that the Ammons Quick Test, which he had administered to Marshall, is a "brief screening device" that takes 10–15 minutes to administer and produces both an I.Q. score and an estimated mental age. R. 36, Hrg. Tr., PageID # 192, 206. It involves asking the subject to match pictures with words that "[s]tart out pretty concrete or simple" and "become increasingly more abstract." *Id.* at PageID # 205. Dr. Forgac stated that Marshall's I.Q. score of 87 was in "the low average range of intelligence" and his mental age of 15 ½ was consistent with his academic performance. *Id.* at PageID # 194. However, he noted that Marshall was "not developmentally delayed intellectually." *Id.* at PageID # 199.

Dr. Forgac explained that the adolescence period does not end at 18 but actually extends into an individual's mid-20s. "[D]evelopmental maturation goes to the mid, sometimes even late 20s so that people will receive developing adult identity from early 20s to late 20s." *Id.* at PageID # 198. Dr. Forgac thought "the only way that [Marshall was] not still a juvenile [was] his chronological age" and that "he [was] functioning at a juvenile level." *Id.* at PageID # 203. He believed that Marshall "viewed himself as a much younger individual and was functioning as a much younger individual." *Id.*

The district court asked Dr. Forgac to explain exactly what role Marshall's growth hormone deficiency played in the crime he committed. Dr. Forgac explained that Human Growth Hormone Deficiency "basically prevents maturation." *Id.* at PageID # 211. He identified several "different aspects of maturation": chronological age, physical age, social age, emotional age, and intellectual age. *Id.* at PageID # 212.

Dr. Forgac further explained that adolescents search for a "group identity." *Id.* By interacting with their peers, they experience "consensual validation," "start feeling an affiliation with a group," and "are able to mature." *Id.* This group interaction "is the road to an adult individual identity." *Id.*

Unlike normal adolescents, Marshall was isolated by his peers due to his short stature and immature appearance. He turned to pornography and looked for children around his own age. He found group interactions and a shared experience through his online activities, including his chatting activities.

Dr. Forgac had performed 5,000 psychological evaluations, but before examining Marshall he had never encountered an individual with Human Growth Hormone Deficiency. He "didn't do an extensive literature search," but he talked to a neuropsychologist friend who "did a little bit of a search." *Id.* at PageID # 214. Dr. Forgac believed that Marshall experienced "a unique developmental delay" and thought it "significant that he was essentially 16, maybe 15-and-a-half years old in every way except chronological age at the time" the criminal activity occurred. *Id.* To a reasonable degree of psychological certainty, Dr. Forgac believed Marshall was "a kid as opposed to an adult." *Id.* at PageID # 218.

**The Sentence**

The district court accepted Dr. Forgac's testimony. It found that Marshall was not an adult but was "a juvenile in a number of ways, chronological age aside," when he engaged in the criminal activity. *Id.* at PageID # 227. Marshall's guideline range was 151 to 188 months, but the district court varied downward to the statutory mandatory minimum sentence of 5 years. *See* 18 U.S.C. § 2252(b)(1). It found that even the

mandatory minimum sentence was greater than necessary, but realized that it could not impose a sentence lower than that amount. Instead, the district court expressed hope that this Court would somehow give it some relief from the constrictions of the mandatory minimum.

In a supplemental memorandum opinion, the district court explained in more detail its concerns with the 5-year mandatory minimum sentence. *See United States v. Marshall*, 870 F. Supp. 2d 489 (N.D. Ohio 2012). It found that the "[t]estimony and other evidence at [Marshall's] sentencing hearing support[ed] the conclusion that at the time of the crime [Marshall] was, and should be characterized for sentencing as, a developmentally immature teenager lacking the ability to appreciate the illegality of child pornography and to control his viewing of easily accessible internet content." *Id.* at 498.

The district court believed that the mandatory minimum sentence for receipt of child pornography was in "direct conflict" with its responsibility under 18 U.S.C. § 3553(a) to "fashion an appropriate sentence." *Id.* at 496. It further opined that in Marshall's case, the mandatory minimum sentence might be unconstitutional under the Eighth Amendment. *Id.* at 499. But it was unwilling to sentence below the mandatory minimum without some support in the caselaw. *Id.*

Marshall appealed, challenging his sentence on several grounds.

## II. ANALYSIS

**A. Standard of Review**

"When reviewing sentencing decisions, we review the district court's factual findings for clear error, while reviewing the district court's conclusions of law *de novo*." *United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005).

## B. Eighth Amendment Challenge

Marshall urges us to hold that his mandatory minimum sentence is unconstitutional based on *Miller v. Alabama*, in which the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 132 S. Ct. 2455, 2460 (2012). The Court declined to decide whether the Eighth Amendment bars a *discretionary* sentence of life without parole for juvenile homicide offenders,[1] but noted that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Id.* at 2469. Relying on *Miller*, Marshall contends that his mandatory sentence is unconstitutional because it did not allow the district judge to sentence him based on his individual characteristics.

Marshall's Eighth Amendment argument is premised on his assertion that he was a juvenile when he committed the crime. But this assertion is simply wrong. Marshall received child pornography between the ages of 18 and 20. He was therefore an adult when he committed the crime.

Marshall claims that based on his growth hormone deficiency, the district court explicitly found him to be a mental and physical juvenile and warns that such factual findings cannot be rejected absent clear error. We do not reject the district court's findings.[2] But neither do we view them as relevant to the issue of whether Marshall qualifies as a juvenile for purposes of the Eighth Amendment.[3]

---

[1] The Court had held two years earlier that a sentence of life without parole for juvenile *non-homicide* offenders was unconstitutional under the Eighth Amendment. *See Graham v. Florida*, 130 S. Ct. 2011, 2030 (2010).

[2] We note, however, that the district court does not appear to have explicitly found Marshall to have been physically immature at the time of the offense. Nor, on our review, would the record support such a finding.

[3] Presumably a sentencing judge can consider a defendant's maturity when evaluating his or her "history and characteristics" under 18 U.S.C. § 3553(a), which the district court did when imposing a below-guideline sentence in this case. In that context, a defendant's mental age might have some legal relevance. But at issue in this case is the imposition of a mandatory minimum sentence, under which Marshall's individual characteristics are not pertinent.

Under the Supreme Court's jurisprudence concerning juveniles and the Eighth Amendment, the only type of "age" that matters is chronological age. The Supreme Court's decisions limiting the types of sentences that can be imposed upon juveniles all presuppose that a juvenile is an individual with a chronological age under 18. *See Miller*, 132 S. Ct. at 2460 ("We therefore hold that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"); *Graham v. Florida*, 130 S. Ct. 2011, 2030 (2010) ("Because 'the age of 18 is the point where society draws the line for many purposes between childhood and adulthood,' those who were below that age when the offense was committed may not be sentenced to life without parole for a nonhomicide crime."); *Roper v. Simmons*, 543 U.S. 551, 568 (2005) ("A majority of States have rejected the imposition of the death penalty on juvenile offenders under 18, and we now hold this is required by the Eighth Amendment.").

The Supreme Court treats juveniles differently because they "have diminished culpability and greater prospects for reform." *Miller*, 132 S. Ct. at 2464. They are often immature and irresponsible, peculiarly susceptible to bad influences, and their character is still malleable. *Id.* Marshall apparently thinks that he shares these traits and therefore believes there is no reason not to treat him differently as well. But he has ignored the crucial role that chronological age plays in our legal system and in the Supreme Court's jurisprudence. The reasons for according special protections to offenders under 18 cannot be used to extend the same protections to offenders over 18.

The Supreme Court has recognized that drawing lines based on chronological age is a not-entirely-desirable but nonetheless necessary approach. In *Roper v. Simmons*, the Court extended from 16 to 18 the age under which offenders are constitutionally ineligible for the death penalty. *Roper*, 543 U.S. at 568. The Court explained its use of chronological age to establish the divide as follows:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity

some adults will never reach. For the reasons we have discussed, however, a line must be drawn . . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

*Id.* at 574.

Using chronological age as the touchstone for determining whether an individual is a juvenile or an adult is the standard approach in our legal system. "For purposes of [the Juvenile Delinquency Act], a 'juvenile' is a person who has not attained his eighteenth birthday . . . ." 18 U.S.C. § 5031. Chronological age sets the boundaries for determining whether an individual is eligible to drive, vote, marry, buy and drink alcohol, be drafted, watch certain movies, and hold certain political offices. None of these age-based privileges and responsibilities ignore chronological age in favor of mental age.

In almost every state, Marshall could vote, serve on a jury, or marry without his parents' consent when he committed the crime. *See Roper*, 543 U.S. at 569. His immaturity did not render him ineligible for these benefits the law granted him by virtue of his chronological age. Nor does his immaturity excuse him from the punishment the law imposes upon him as a consequence of that age.

The legal system that would emerge from Marshall's proposed approach that defines a juvenile by factors other than chronological age would be essentially unmanageable. Before a court could impose on a defendant over 18 those punishments constitutionally barred from being imposed on juveniles, it would first have to wade through tedious expert testimony to determine whether the defendant's mental age was commensurate with his chronological age. We refuse to impose such a difficult and time-consuming requirement on the district courts.

Additionally, an approach that ignores chronological age in favor of other aspects of maturity should cut both ways. Individuals under 18 with the mental maturity of adults would have to be classified as adults for purposes of the Eighth Amendment. This

approach is unthinkable; the Supreme Court would never accept such an end-run around the constitutional protections for chronological juveniles.

Marshall contends that he should be treated differently from run-of-the-mill immature offenders because, due to his growth hormone deficiency, his immaturity is physiological and not merely psychological. The trouble with this argument is that the record does not show a direct link between his physiological condition and his mental immaturity. One of the sources Marshall cites for information on Human Growth Hormone Deficiency notes that children with this disorder have normal intelligence. *See* Child Growth Foundation, *Endocrine Gland Disorders*, http://www.childgrowthfoundation.org/Default.aspx?page=ConditionsGHD (last visited November 20, 2013).

Dr. Forgac's finding that Marshall had a mental age of 15 ½ was based on the brief screening test he administered, not on Marshall's physiological disorder. Dr. Forgac was by his own admission not an expert on Human Growth Hormone Deficiency. When asked what role Marshall's growth hormone deficiency played in the crime he committed, Dr. Forgac drew only an indirect link by theorizing that Marshall's small stature caused other children to ostracize him, which in turn led him to seek "consensual validation" through pornography and online chatting. Dr. Forgac explicitly stated that Marshall was not developmentally delayed intellectually.[4] Furthermore, Dr. Forgac's observation that Marshall functioned as a juvenile is clearly belied by the reality that Marshall attended college, worked a full-time job, and owned a car and credit card. From all objective indications, Marshall was functioning as a normal 20-year-old, not as a 15 1/2-year-old.

---

[4]Marshall's brief quotes the abstract of an article that connects brain development to human growth hormone. *See* Zvi Laron & Avinoam Galatzer, *Growth Hormone, Somatomedin and Prolactin: Relationship to Brain Function*, 7 Brain & Dev. 559, 564 (1985). The article notes that children with growth hormone deficiency have a lower I.Q., deficient visuomotor function, and deficient school achievements and social adjustment. But the article does not indicate that growth-hormone-deficient children have a lower mental age or perceive themselves to be younger than their chronological age. Marshall's argument is based on his mental and physical age, not on his low I.Q.

And even if we agreed with Marshall's assertion that his growth hormone deficiency rendered him "literally unable to grow up," we would still not be inclined to classify him as a juvenile. Considerations of efficiency and certainty require a bright line separating adults from juveniles. For purposes of the Eighth Amendment, an individual's eighteenth birthday marks that bright line. We decline to create exceptions, even for offenders with rare physiological conditions.

In short, Marshall is at the very most an immature adult. An immature adult is not a juvenile. Regardless of the source of the immaturity, an immature adult is still an adult. Because Marshall is not a juvenile, he does not qualify for the Eighth Amendment protections accorded to juveniles. We therefore need not determine whether a mandatory 5-year sentence for a juvenile would be unconstitutional under the Supreme Court's reasoning in *Miller v. Alabama*.

## C. Additional Challenges

Marshall challenges his sentence on three additional grounds. These arguments lack merit and require only brief discussion.

*First*, Marshall challenges his sentence based on a perceived conflict between two federal statutes. Congress instructs district courts to impose sentences "sufficient, but not greater than necessary, to comply with" several enumerated purposes in the statute. 18 U.S.C. § 3553(a). Marshall contends that this provision, commonly known as the "parsimony provision," conflicts with the 5-year mandatory minimum sentence required for defendants guilty of knowingly receiving child pornography. Marshall believes that in his situation a 5-year sentence is greater than necessary to accomplish the penological goals of deterrence, retribution, incapacitation, and rehabilitation. He argues that Congress could not have foreseen that the mandatory minimum would be applied to an offender with his unique characteristics.

This Court has already rejected this very argument. "When it comes to rigid minimum sentences, we acknowledge the tension with section 3553(a), but that very general statute cannot be understood to authorize courts to sentence below minimums

specifically prescribed by Congress." *United States v. Cecil*, 615 F.3d 678, 695 (6th Cir. 2010) (quotation omitted). No matter how excessive a minimum sentence appears in a particular case, the parsimony provision does not allow courts to avoid imposing it. The whole point of mandatory minimums is to remove from judges the discretion to impose low sentences on sympathetic defendants. Marshall's argument that the mandatory minimum should be disregarded based on his unique characteristics must necessarily fail.

*Second*, Marshall contends that 18 U.S.C. § 2252 impermissibly grants sentencing authority to the prosecutor because there is no intelligible principle separating receipt (which carries a 5-year mandatory minimum sentence) from possession (which does not). But he has failed to recognize that possession of child pornography is a lesser included offense of receipt of child pornography. *See United States v. Ehle*, 640 F.3d 689, 695 (6th Cir. 2011).[5] Whether to prosecute and whether to charge the greater offense or the lesser-included offense are decisions well within the prosecutor's discretion. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996); *United States v. Batchelder*, 442 U.S. 114, 123–26 (1979).

Furthermore, even when two statutes prohibit the exact same conduct, the prosecutor can choose which statute to charge under. *Batchelder*, 442 U.S. at 123–126. So long as "the provisions at issue plainly demarcate the range of penalties that prosecutors and judges may seek and impose," "the power that Congress has delegated to those officials is no broader than the authority they routinely exercise in enforcing the criminal laws. Having informed the courts, prosecutors, and defendants of the permissible punishment alternatives available under each [statutory provision], Congress has fulfilled its duty." *Id.* at 126. This principle applies even when one of the two statutory provisions carries a mandatory minimum sentence and the other does not.

---

[5]*Ehle* dealt with receipt and possession of child pornography under § 2252A, which can be violated when the images involve real or virtual minors. In contrast, § 2252 can only be violated by images depicting real minors. The Sixth Circuit has not yet held that possession is a lesser included offense of receipt under § 2252. But the two statutes are "materially identical," *United States v. Dudeck*, 657 F.3d 424, 429 (6th Cir. 2011), and there is no reason not to extend *Ehle*'s holding to § 2252.

*Third and finally*, Marshall argues that his sentence is substantively unreasonable because the district court thought it should have discretion to impose a sentence below the mandatory minimum but did not do so. "[A] district court's ardent desire to go lower does not make a statutory mandatory minimum sentence unreasonable." *Cecil*, 615 F.3d at 695. "When a court and a mandatory minimum are in conflict, the minimum wins." *Id.* When it has been challenged as being too high, a mandatory minimum sentence is by definition substantively reasonable.

### III. CONCLUSION

We affirm Marshall's 5-year sentence.

_____

**CONCURRING IN THE JUDGMENT**

_____

LAWSON, District Judge. Concurring in the judgment. The court today finds that Dylan Marshall's sentence does not violate the Eighth Amendment because chronologically he is an adult, and therefore he is not afforded the protection given juveniles under the Supreme Court's juvenile sentencing cases. The district court found that Marshall was a juvenile in all material respects *except* for his chronological age — a finding that the majority "do[es] not reject." Because sentencing is an "individualized" task, *Gall v. United States*, 552 U.S. 38, 50 (2007), and Marshall is not seeking a categorical ban on mandatory minimum sentences for all juvenile offenders, I do not find that his chronological age presents an obstacle to the relief he seeks. Nor do I share the majority's concern that a sentencing regime would be unmanageable if courts look behind chronological age on a case-by-case basis to assess those factors that render juveniles "constitutionally different from adults for purposes of sentencing." *Miller v. Alabama*, 132 S. Ct. 2455, 2464 (2012). Nonetheless, as inappropriate, counterproductive, and unnecessary the five-year custody sentence imposed on Marshall might be in this case, it is not "grossly disproportionate" to the offense and therefore neither a cruel nor unusual form of punishment for juveniles in the American criminal justice system. Therefore, I must reluctantly concur in the judgment of the court affirming the sentence as acceptable under the Eighth Amendment.

I.

The Supreme Court has on several occasions explicated the reasons why juveniles are different from adults when it comes to imposing criminal punishment. First, their immaturity and "underdeveloped sense of responsibility" is said to lead to "recklessness, impulsivity, and heedless risk-taking." *Miller*, 132 S. Ct. at 2464 (quoting *Graham v. Florida*, 560 U.S. 48, ---, 130 S. Ct. 2011, 2026 (2010), and *Roper v. Simmons*, 543 U.S. 551, 569 (2005)). Second, children are thought to be more vulnerable to negative peer pressure and other influences and "lack the ability to

extricate themselves from horrific, crime-producing settings." *Ibid.* Third, because a child's character is still developing, "his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].'" *Ibid.* (quoting *Roper*, 543 U.S. at 570).

These features that distinguish juveniles from adults have prompted the Supreme Court to impose limits under the authority of the Eighth Amendment upon specific kinds of sentences and sentencing practices for juvenile offenders. For instance, the Court has imposed an absolute bar to the imposition of the death penalty upon defendants under age 18. *Roper*, 542 U.S. at 575. Similarly, the Court has held unconstitutional sentences of life without parole for juvenile offenders who commit nonhomicide offenses. *Graham*, 130 S. Ct. at 2034. And the mandatory imposition of a life-without-parole sentence upon a juvenile for any crime, including homicide, contravenes the Eighth Amendment. *Miller*, 132 S. Ct. at 2469.

The district court found that Marshall exhibited all the traits identified by the Supreme Court in its juvenile sentencing cases. The uncontested evidence established that Marshall suffered from human growth hormone deficiency that was not diagnosed until 2005. That led to a lower-than-average intelligence quotient and "an estimated mental age of 15.5 years." *United States v. Marshall*, 870 F. Supp. 2d 489, 498 (N.D. Ohio 2012). The district court concluded that "at the time of the crime [Marshall] was, and should be characterized for sentencing as, a developmentally immature teenager lacking the ability to appreciate the illegality of child pornography and to control his viewing of easily accessible internet content." *Ibid.*

The majority does not dispute any of those points. It simply disregards them as irrelevant because of Marshall's chronological age. But that is incorrect. The Court in *Miller* recognized the obvious fact that these features of adolescence do not instantly disappear upon the arrival of one's eighteenth birthday, which presumably prompted the Court to observe that "'youth is more than a chronological fact.'" *Id.* at 2467 (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982)).

A defendant's youth, with its varying characteristics of immaturity, vulnerability, and less-than-fully-developed character, is always a factor in determining an appropriate

sentence. It is plain that "children are constitutionally different from adults" not because they are under 18 years of age, but because they have not attained the level of maturity that characterizes adult mentation. *See Miller*, 132 S. Ct. at 2464–65. The Supreme Court's use of chronological age does not diminish that precept. Rather, chronological age has been used merely as a bright line to define *categorical* prohibitions on the imposition of certain kinds of sentences deemed disproportionate as a matter of constitutional law. The passage from *Roper* quoted by the majority is a case in point. In "draw[ing] the line" at age 18 for death penalty eligibility (raising it from the previous bright-line limit of age 16, established in *Thompson v. Oklahoma*, 487 U.S. 815 (1988)), the Court defined a class of individuals for whom the death penalty is automatically deemed disproportionate and therefore unconstitutional. That pronouncement does not justify the converse proposition, that the death penalty is constitutional for all those over 18 years old. And it does not render immaterial for an Eighth Amendment analysis the fact that a defendant has the mental characteristics of a juvenile.

Nor is the Supreme Court's categorical bar to certain types of sentences limited to those who are chronological juveniles, that is, under 18 years old. In *Atkins v. Virginia*, 536 U.S. 304 (2002), the Court found that imposing the death penalty on mentally retarded defendants is unconstitutional. In reaching that conclusion, the Court identified the same features that diminished the defendant's culpability as in the juvenile cases. *Id.* at 318 ("Because of their impairments, . . . [mentally retarded persons], by definition . . . have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others."). In *Atkins*, the defendant was an adult, but he had the "mental age" of between 9 and 12 years old. *Id.* at 310. Indeed, the Court, in essence, has equated diminished mental capabilities of juveniles and mentally retarded persons as the central justification for its categorical restrictions on types of sentences for classes of individuals: both juveniles and mentally retarded individuals are "categorically less culpable than the average criminal." *Roper*, 543 U.S. at 567 (quoting *Atkins*, 536 U.S. at 316).

Marshall does not seek a categorical bar to the imposition of mandatory minimum sentences upon juvenile offenders, of which he counts himself as one. Rather, he argues that the mandatory minimum sentence is unconstitutional because it prevented the district court from considering the developmental features that render him a juvenile in all material respects, and therefore his sentence is excessive when measured against his diminished culpability. I do not believe that chronological age plays a determining role in that argument, and therefore I cannot join the court's opinion, which holds otherwise.

## II.

The question presented is whether the five-year prison sentence mandated by the statute in this case violates the Eighth Amendment when imposed upon Marshall, a virtual juvenile. Marshall argues that under all the circumstances, the sentence is excessive. The Eighth Amendment states that "cruel and unusual punishments [shall not be] inflicted." Sentences that are "excessive" violate that prohibition. *Atkins*, 536 U.S. at 311. A sentence is excessive if it is disproportionate, that is, if it contravenes "the basic 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Roper*, 543 U.S. at 560 (quoting *Weems v. United States*, 217 U.S. 349, 367 (1910)). Notably, in *Miller*, the Court added that a sentence must be proportionate "to both the offender and the offense." *Miller*, 132 S. Ct. at 2463.

But the proportionality principle found in the Eighth Amendment is not well defined when it comes to a term-of-years sentence. The Supreme Court has acknowledged "that [its] precedents in this area have not been a model of clarity." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). "Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Ibid.*

In *Lockyer v. Andrade*, the Supreme Court reversed the Ninth Circuit's grant of a writ of habeas corpus on the ground that two twenty-five-years-to-life sentences imposed under California's "three strikes" law, where the triggering felony was the theft of $150 worth of video tapes, violated the Cruel and Unusual Punishment Clause of the

Eighth Amendment.  The Court noted that the "thicket" created by its jurisprudence consisted primarily of its decisions in *Solem v. Helm*, 463 U.S. 277 (1983), *Harmelin v. Michigan*, 501 U.S. 957 (1991), and *Rummel v. Estelle*, 445 U.S. 263 (1980).  In Andrade's state court proceedings, the California court observed that the proportionality rule set forth in *Solem* was cast into doubt by *Harmelin* and proceeded to analyze Andrade's sentence under the approach taken in *Rummel*, where the Supreme Court rejected a claim that a life sentence imposed under Texas's recidivist statute was grossly disproportionate to the theft felonies that formed the predicate for the sentence.  The California court concluded that Andrade's sentence was not disproportionate.  The Supreme Court held that the decision was not contrary to or an unreasonable application of federal law that was clearly established by the Supreme Court.  *Lockyer*, 538 U.S. at 72–77.

The Supreme Court has held that the Eighth Amendment does not require strict proportionality between the crime and sentence.  *See Harmelin*, 501 U.S. at 965; *Graham*, 130 S. Ct. at 2021.  As the Supreme Court observed in *Lockyer*, it is generally recognized after *Harmelin* that the Cruel and Unusual Punishment Clause of the Eighth Amendment forbids only an extreme disparity between crime and sentence, that is, sentences that are "grossly disproportionate" to the crime.  *Lockyer*, 538 U.S. at 72 (citing *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring)); *see also Graham*, 130 S. Ct. at 2021 (reading *Harmelin* as stating "that the Eighth Amendment contains a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are "grossly disproportionate" to the crime'" (citations omitted)).

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."  *Rummel*, 445 U.S. at 272.  Rummel was convicted of obtaining $120.75 by false pretenses, a crime punishable by at least two years but not more than ten years in prison. He was sentenced as a recidivist to life imprisonment with the possibility of parole. His two prior felonies consisted of fraudulent use of a credit card to obtain $80 worth of goods and services,

a felony punishable by two to ten years in prison; and passing a forged check for $28.36, a crime punishable by two to five years in prison. The Supreme Court held that Rummel's life sentence under the state recidivist statute did not constitute cruel and unusual punishment. In *Harmelin*, the Supreme Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine for an offender with no prior felony convictions.

The Supreme Court overturned a life sentence in *Solem* on the ground that it was significantly disproportionate to Helm's crime and therefore prohibited by the Eighth Amendment. However, Helm had been sentenced to life imprisonment without the possibility of parole for uttering a "no account" check for $100, and his prior felonies also were minor, nonviolent crimes. By contrast, the Supreme Court reaffirmed *Rummel* and found constitutional a sentence of twenty-five years to life imposed upon a fifth felony theft conviction. *See Ewing v. California*, 538 U.S. 11, 24–31 (2003).

None of those cases involved juveniles. Nonetheless, the general approach to evaluating a proportionality challenge to a term-of-years sentence for both juveniles and adults calls *first* for "comparing the gravity of the offense and the severity of the sentence." *Graham*, 130 S. Ct. at 2022. *Second*, the court must then "compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Ibid.* "If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." *Ibid.* (quoting *Harmelin*, 501 U.S. at 1005).

The gravity of offenses dealing with child pornography cannot be overestimated. This court and others have documented well the devastating and long-lasting effects that the creation and dissemination of child pornography have on its victims, inflicting emotional, physical, and psychological damage, sometimes permanently. *See United States v. Bistline*, 665 F.3d 758, 766 (6th Cir. 2012); *see also New York v. Ferber*, 458 U.S. 747, 757–59 & nn.8–10 (1982). Neither the district court nor the defendant here suggests otherwise. *See United States v. Marshall*, 870 F. Supp. 2d at 493.

In light of the sentences found constitutional in *Lockyer*, *Harmelin*, *Rummel*, and *Ewing*, it is difficult to conclude that a five-year sentence for the serious crime of receiving child pornography supports an inference of gross disproportionality. The Second Circuit concluded that no such inference arises from the mandatory five-year sentence in a distribution-of-child-pornography case, and that reasoning conveniently applies here. *United States v. Reingold*, 731 F.3d 204, 218–19 (2d Cir. 2013) (noting "the depicted sexual exploitation of an eight-year old on the distributed video" in that case and concluding "that the crime of conviction here is a more serious offense than the golf club and videotape thefts in *Ewing* and *Lockyer*, for which the Supreme Court upheld prison sentences of 25 years to life").

But Marshall argues that the five-year sentence is disproportionate to him because its mandatory nature prevents the court from considering his individual characteristics as a virtual juvenile. After all, he says, the Supreme Court did not hold that a life-without-parole sentence for juvenile murderers was unconstitutional *per se* in *Miller v. Alabama*; it "mandate[d] only that a sentencer follow a certain process — considering an offender's youth and attendant characteristics — before imposing a particular penalty." *Miller*, 132 S. Ct. at 2471.

I do not believe that *Miller* can be read to prohibit mandatory term-of-years sentences for juveniles across the board. It is true that the *Miller* court did distinguish the statement in *Harmelin* that "a sentence which is not otherwise cruel and unusual" does not "becom[e] so simply because it is 'mandatory,'" *Harmelin*, 501 U.S. at 995, by observing that *Harmelin* "had nothing to do with children and did not purport to apply its holding to the sentencing of juvenile offenders." *Miller*, 132 S. Ct. at 2470. However, the *Miller* court's main premise was that "youth matters for purposes of meting out the law's *most serious punishments*," *id.* at 2471 (emphasis added) — meaning death and life without parole — and therefore the failure to consider individual characteristics *in those types of cases* is unconstitutional. *See id.* at 2469 ("Although we do not foreclose a sentencer's ability to [impose a life-without-parole] judgment in homicide cases, we require it to take into account how children are different, and how

those differences counsel against irrevocably sentencing them *to a lifetime in prison*."
(emphasis added)).  Applying that reasoning to a five-year mandatory sentence is too
great a span to be supported by the Court's rationale.

The five-year sentence in this case, which almost certainly is greater than
necessary to achieve any rational sentencing objectives, cannot be considered extreme
in the greater context of juvenile punishment.  There are hundreds of cases in which
youthful offenders have been sentenced to much longer prison terms for serious crimes.
*See, e.g.*, *Lelenoa v. Uribe*, No. 11-6522, 2013 WL 569598 (C.D. Cal. Feb. 10, 2013)
(denying an Eighth Amendment habeas claim where petitioner was sentenced to 23 years
total for five armed robberies committed when he was a juvenile); *Young v. State*, No.
01-09-00790, 2012 WL 668927 (Tex. App. Mar. 1, 2012) (holding that a sentence of
15 years for aggravated sexual assault involving a child under the age of 14 was not
disproportionate where the defendant was 17 at the time of the crime); *State v. Pettigrew*,
204 N.C. App. 248, 693 S.E.2d 698 (2010) (holding that a sentence of 32 to 40 years was
not disproportionate for convictions of sexual assault of a minor stemming from
defendant's frequent abuse of his younger relative when defendant was between 11 and
16 years old); *Cuvas v. State*, 306 Ga. App. 679, 703 S.E.2d 116 (2010) (upholding a
sentence of 10 years imprisonment for armed robbery where the defendant was 13 years
old at the time of the crime); *Stovall v. State*, 05-95-01862, 1997 WL 459082 (Tex. App.
Aug. 13, 1997) (holding that a sentence of 20 years for aggravated assault (the statutory
maximum) was not disproportionate where the defendant was 15 at the time of the crime
and had only a misdemeanor criminal record).  Despite Marshall's immaturity and
juvenile-like characteristics, I cannot conclude that the five-year custody sentence is
*grossly* disproportionate to the crime to which he pleaded guilty.  Therefore, I concur in
the court's judgment affirming the sentence against Marshall's Eighth Amendment
challenge.

III.

Two more points deserve discussion.  The district court found that a sentence of
"60 months is excessive, unjust, and greater than necessary as applied to this

Defendant." *Marshall*, 870 F. Supp. 2d at 499. Based on the record, it is difficult to quarrel with that conclusion. The injustice in this case results from the combination of the government's decision to charge the defendant with *receipt* rather than *possession* of child pornography, and the rigidity of the mandatory minimum sentence — which divests the district court of discretion to consider individual characteristics when attempting to impose a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the crime, achieve deterrence, protect the public, and address the defendant's special needs. 18 U.S.C. § 3553(a)(1), (2).

A.

The crime of *receiving* child pornography is prohibited by 18 U.S.C. § 2252(a)(2); it is punishable by a sentence of at least five years and up to 20 years. *Id.* § 2252(b)(1). The crime of *possessing* child pornography is prohibited by 18 U.S.C. § 2252(a)(5); it is punishable by a sentence of up to 20 years (if the images involve prepubescent minors). There is no mandatory minimum sentence for possession. *Id.* § 2252(b)(2). The statutes do not define the terms "receipt" or "possession." This court has stated, however, that "standing alone, the current statutory scheme makes no principled distinction between possessing and receiving child pornography, which can often times be virtually identical conduct, but nonetheless results in vastly different mandatory sentencing ranges." *United States v. Robinson*, 669 F.3d 767, 776 n.2 (6th Cir. 2012); *see also United States v. Dudeck*, 657 F.3d 424, 429 (6th Cir. 2011) (acknowledging that "'[t]hese statutory provisions . . . [are] materially identical.'" (quoting *United States v. Miller*, 527 F.3d 54, 64 n.10 (3d Cir. 2008)).

Marshall contends that because there is no real difference between the crime of possession of child pornography and receipt of child pornography, save that the latter carries a mandatory minimum sentence, Congress unlawfully delegated what amounts to judicial sentencing authority to the executive branch. The majority rejects that argument, as it is obligated to do, because the prosecutor has broad discretion to select the charge to present to the grand jury. *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *see also Wayte v. United States*, 470 U.S. 598, 607 (1985); *Bordenkircher v.*

*Hayes*, 434 U.S. 357, 364 (1978). One might expect that the government would take great care when deciding to charge a crime that carries a mandatory minimum sentence, especially when an identical crime without a mandatory sentence is available and will serve the same penological goals. But the charging decision in this case was woefully uninformed and even irresponsible. Nonetheless, "an exercise of prosecutorial discretion cannot be successfully challenged merely on the ground that it is irrational or arbitrary; in the realm of prosecutorial charging decisions, only invidious discrimination is forbidden." *United States v. Moore*, 543 F.3d 891, 900 (7th Cir. 2008). Although the government's judgment in this case can be questioned, there is no legal basis to second-guess the government's choice of charges.

B.

Nor can the defendant prevail on his argument that the mandatory minimum sentence must yield to the parsimony provision in 18 U.S.C. § 3553(a), as the majority correctly states. This court's precedents have established that a sentencing court's determination that a mandatory sentence works an injustice is insufficient by itself to disregard the mandate. *United States v. Cecil*, 615 F.3d 678, 695 (6th Cir. 2010) (declaring that "[w]hen a court and a mandatory minimum are in conflict, the minimum wins"). Furthermore, statutes mandating minimum sentences trump the more general command of section 3553(a). *Ibid.* (quoting *United States v. Franklin*, 499 F.3d 578, 585–86 (6th Cir. 2007)). And curtailing a court's sentencing discretion by requiring mandatory minimum sentences does not offend the separation of powers doctrine. *United States v. Odeneal*, 517 F.3d 406, 414 (6th Cir. 2008).

If there is to be relief for the occasional defendant like Dylan Marshall for whom a mandatory minimum sentence "is excessive, unjust, and greater than necessary," it must come from Congress. In March of this year, Senator Rand Paul introduced S. 619, the Justice Safety Valve Act of 2013, which would amend 18 U.S.C. § 3553 to add subsection (g), that would state:

> (1) General rule.--Notwithstanding any provision of law other than this subsection, the court may impose a sentence below a statutory minimum

> if the court finds that it is necessary to do so in order to avoid violating the requirements of subsection (a).

The legislation would require "[t]he court [to] state, in the written statement of reasons, the factors under subsection (a) that require imposition of a sentence below the statutory minimum." S. 619, 113th Cong. § 2(g)(3). The Bill is co-sponsored by Senator Patrick Leahy. It appears that the intent of the Bill's sponsors is to allow sentencing courts a broader measure of discretion and give full effect to Congress's stated sentencing goals reflected in section 3553(a). *See Reevaluating the Effectiveness of Federal Mandatory Minimum Sentences: Hearing on S. 619 Before the S. Comm. on the Judiciary* (2013) (Statement of Sen. Patrick Leahy) (referencing mandatory minimum sentences and acknowledging, "When I look at the evidence we have now, I realize we were wrong. Our reliance on a one-size-fits-all approach to sentencing has been a great mistake. Mandatory minimums are costly, unfair, and do not make our country safer. . . . Senator Paul and I believe that judges, not legislators, are in the best position to evaluate individual cases and determine appropriate sentences.").

Senate Bill 619, however, is not the law at present. Until it — or legislation like it — is enacted, defendants like Dylan Marshall are out of luck. The mandatory five-year sentence imposed in this case is not unconstitutional, despite the defendant's mental age, and under the applicable statutes, the district court was bound to impose it. For those reasons, I concur in the judgment affirming the sentence.